# Wheeling.

## JOHNSON *v.* CITY OF PARKERSBURG.

Decided April 3, 1880.

1880
Special Term.

Johnson
v.
City of Parkers-
burg.

1. If a municipal corporation, in changing the grade, by raising or depressing its streets, permanently *damages* private property without acquiring the right to do so, and if demanded, by paying just compensation therefor, it violates section 9 of the bill of rights, which declares that private property shall not be taken or *damaged* for public use *without just compensation.*

2. The first clause of section 9 of the bill of rights, *ex proprio vigore* protects private property from *damage* for public use, without just compensation.

3. When the Constitution forbids a *damage* to private property and points out no remedy, and no statute gives a remedy for the invasion of the right of property thus secured, the common law, which gives a remedy for every wrong, will furnish the appropriate action for the redress of such grievances.

4. Upon a question as to the establishment of the grade of streets in a city, the records of the city council on the subject are proper evidence to go to the jury.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Wood, rendered on the 10th day of April, 1878, in an action on the case in said court then pending, wherein Romanta Johnson was plaintiff, and the city of Parkersburg was defendant, allowed upon the petition of said defendant.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the judgment complained of.

JOHNSON, JUDGE, furnishes the following statement of the case :

This is an action of trespass on the case brought by the plaintiff, Johnson, against the defendant, The City of Parkersburg, in the circuit court of Wood county in April, 1867. The declaration alleges the passage by the Legislature of the State of West Virginia on the 27th of February, 1877, of "an act establishing a uniform grade and system of drainage in the city of Parkersburg," and sets out the act in full.

The first section ot the act provides, that the city council of Parkersburg shall previous to the 1st day of March, 1867, cause to be made, and adopt a complete system of grades and drainage for the streets and alleys thereof, and place the same on record in the recorder's office of Wood county, and also in the office of the city engineer. The second section provides, that when property now within the city, or additions made to the city, is laid out, it shall be the duty of the council to adopt a system of grades and drainage for such additions within six months from the date thereof, which shall be recorded as required in the first section.

Section four provides, that "if at any time the city council may desire to change the grade of any street or alley from that established by virtue of this act, it may have the power to do so, provided the assent of a majority of the property-owners along the line of said proposed change be first obtained thereto, provided that if said change be deemed expedient for the general welfare of the city, and the assent of a majority of the property-owners along the line of said proposed change cannot be obtained thereto, the council may make the change upon the payment of such damages as may be agreed upon by said property-holders and council, and in case such damages cannot be agreed upon by any of said property-holders and council, then the council may make the desired change in such grade upon lowering or raising the buildings along said line to the proposed grade."

The declaration further alleges, that on the 28th of February, 1872, the first section of said act was amended by inserting the words "previous to the 1st day of November, 1872," in lieu of the words "previous to the 1st day of March, 1867"; that in pursuance of said act so amended the said city did employ one Scowden, an engineer, who made a uniform system of grades and drainage for the streets and alleys of said city and reported the same to the council of said city, which was by the said council adopted ; that the plaintiff was about to buy a lot on Pike street in said city, and in November, 1873, applied to S. H. Piersol, the engineer of the said city, to ascertain the grade of the said street adjoining said lot, and was informed by said engineer, that the grade of the said street as established by said city in pursuance of said act, would require a cut of eighteen inches ; that relying upon the grade being so established he purchased said lot, and in conformity to said grade so established erected a dwelling-house thereon, and moved into said house, and expended large sums of money in improving and beautifying said lot, and continued to occupy the same unmolested until about the month of May, 1876, when the city council of Parkersburg, disregarding the said act of the Legislature and without asking or seeking the assent of the plaintiff, or a majority of, or any of the property-holders along Pike street at or near the point at which the said lot is situated, unlawfully, wrongfully and injuriously commenced a change of the grade of said Pike street by filling with dirt, gravel, &c., the said street in front of plaintiff's said lot, and against the protestations of said plaintiff continued to fill the said street at the point opposite to and adjoining the said plaintiff's property, until the grade is five feet or more above that which was the established grade of the said street, at the time the plaintiff became the owner of said lot, and at the time he erected his said dwelling-house upon the same, thereby obstructing the ingress to and egress from the plaintiff's said dwelling-house, thereby compelling the

plaintiff to lay out large sums of money, and put him to great labor, to enable him to use and occupy his said house; that said city council of Parkersburg at no time asked the assent of this plaintiff, or a majority of, or any of, the property-owners along the line of the street, where said change in the grade was proposed to be made, nor at any time proposed to pay the plaintiff any damage done to said property, to be agreed upon between the plaintiff and defendant, which assent, the said act expressly declares, should be first obtained, and said plaintiff never assented to such change; that the said defendant though often requested, refused, and still refuses, to pay the plaintiff any damages for the said injury done to his property; and though often requested, the said defendant has refused, and still refuses, to raise the said dwelling-house of the plaintiff and place it upon the new grade so made by it; and by reason of the premises the plaintiff has been, and is, greatly annoyed and inconvenienced in the use, possession and enjoyment of the said dwelling-house, garden-ground and premises; and the same thereby became and were greatly damaged and lessened in value to the damage of the plaintiff $500.00, &c.

The defendant appeared and demurred to the declaration; and the demurrer was overruled; and the defendant pleaded not guilty. The case was tried before a jury; and a verdict for $200.00 damages was rendered against the defendant. Motion for a new trial was made and overruled; and on the 12th day of April, 1878, judgment was rendered on the verdict.

Two bills of exceptions were taken to the rulings of the court during the trial. The first, to the judgment of the court permitting certain orders of the city council of Parkersburg to be introduced as evidence to the jury. The said orders are as follows:

" At a special meeting held April 24, 1873, present the mayor, and councilmen Burk, Farrow, Kirkpatrick, Logan, Stahlman and Stephenson.

"Mr. R. T. Scowden, hydraulic and mechanical engi-

neer, of Cincinnati, being present by invitation of the council made a general statement in reference to waterworks. Mr. Stephenson offered the following, which was unanimously adopted :

"*Resolved*, That we pay Mr. Scowden forty (40) dollars for expenses and services for coming to the city of Parkersburg at the request of the mayor and city council, and that the mayor draw his warrant on the treasurer for the payment of the same, and,

"*Resolved, also,* That at the next regular meeting we will take into consideration the matter of employing him to make an estimate of establishing water-works and also an estimate of establishing the regular grades of the streets and alleys of said city, and will correspond with him immediately thereafter."

"And at a regular meeting of the city council held on the 27th day of May, 1873, present, the mayor and councilmen Farrow, Burk, Stephenson, Smith, Kirkpatrick and Logan."

"Among other things is the following :

"On motion of Mr. Logan, Mr. Scowden was allowed $50 on account of surveying the streets and establishing a city grade for the same."

"And at an adjourned meeting of the city council, held on the 10th of June, 1873, present, the mayor and councilmen Farrow, Stahlman, Stephenson and Smith.

"Among other things is the following :

"On motion, R. T. Scowden was allowed $200 on account of surveying the streets and alleys and furnishing profiles."

"At a regular meeting of the city council held on the 12th day of August, 1873, present, the mayor and councilmen Burk, Farrow, Kirkpatrick, Logan, Stahlman and Smith.

"Among other things is the following :

"On motion, council proceeded to consider the grade of the streets."

"On motion, it was agreed that the grade as made by

Mr. Peacock, C. E., and drawn on the profile from Green street southeast to the corporation line be adopted as the permanent grade."

"At a special meeting of the city council held on the 14th day of November, 1873.

"Among other things is the following:

" On motion, *Resolved,* That the clerk is hereby directed to prepare a proper index for, and have bound in a substantial manner, the sheets showing the profiles and adopted grades of the streets and alleys of the city, as made by W. L. Peacock, C. E., and the city attorney be required to petition the State Legislature to pass an act legalizing said survey and grade."

The second bill of exceptions is to the judgment of the court overruling defendant's motion for a new trial. This bill certifies the facts proved on the trial. The facts so certified as proved are substantially as follows : That in 1874 the plaintiff purchased a vacant lot on Pike street in said city. That he applied to the surveyor of the city to show him the grade as established on said Pike street adjoining his said lot. That the surveyor told him that the grade of said street, as established by the city at that point, would require a cut in the street of about eighteen inches, as shown on the profile and maps in the office of the city-council, and which were adopted by said council as the grades of the streets of said city. That plaintiff, relying upon the statements of said surveyor and upon the information thus shown by said profiles and maps, built a dwelling-house and made valuable improvements on said lot ; the house was built with reference to the grade as stated by the surveyor and shown by the said profiles and maps. That after the said house had been built, to wit, in May, 1876, said street was, by the order and direction of said city, through its council, filled on the side next the plaintiff's lot to the extent of three or four feet, making the side of said street next to said lot four or five feet higher than the point designated by said surveyor as being on

1880
Special Term

Johnson
v.
City of Parkers-
burg.

the said grade, and built a wall on the side of the street next to plaintiff's lot, said wall being built almost to the top of the front door of plaintiff's said dwelling-house. The present surveyor testified, that said city had recognized the grade as laid down on certain books and profiles and maps, kept at the place of meeting of said council, and that the books, profiles and maps before the jury contained the grade referred to. That no system of grade or drainage or anything relating thereto was ever recorded, in either the office of the recorder of Wood county or of the clerk of the county court of Wood county, as provided by the acts of the Legislature referred to in plaintiff's declaration. That in order to prove that the city had established a grade, or system of grades, as alleged in said declaration, the plaintiff introduced in evidence, and read to the jury, from the records of the city council what was excepted to in the first bill of exceptions, the said books being first proven as the minute books of said city-council.

It was proved, that said building was erected on Pike street, within the boundary referred to in the order of the city-council made on August 12, 1873; that the profile made by Mr. Peacock, city engineer, referred to in said order, was the one offered in evidence to the jury, and which was on file in the office of the city-council, and that said profile showed a cut in front of plaintiff's lot; that the clerk had performed his duty under the order of the council dated November 11, 1873, and that the profiles and map offered to the jury were made by Mr. Peacock, city engineer, and showed the profiles and adopted grade on Pike street; that there was a conflict in the testimony as to the effect upon the value of the plaintiff's said property, some witnesses stating that the plaintiff was damaged to the extent of $300.00, $400.00, or $500.00; and one witness stated that no damage or injury had been done to the plaintiff; that said Pike street was formerly a portion of the North Western Virginia Turnpike, in which the State was interested, and

which was ceded or relinquished to said city by act of the Legislature; that all the acts complained of in filling up said street and building said wall in front of said lot did cut off access to plaintiff's lot to some extent, rendering it inaccessible, except by a stairway going down from said wall; that said wall had a railing on it in front of said plaintiff's lot; and that the said acts were all done by the city-council and under its authority, by its agents and servants, against the protest of the plaintiff, who asked them to suspend their work, and not fill up in front of his house, but they persisted in doing it against his remonstrances and earnest protest; that all said acts were done after the said grade was given to the plaintiff by the officer of said council, and after he had built his said house in conformity to the grade established by them.

The court refused to set aside the judgment and grant a new trial. To the judgment upon the verdict the city obtained a writ of error and *supersedeas.*

*B. M. Ambler,* for plaintiff in error:

I. The plaintiff cannot recover upon the special statute relating to the grades of the city, and mentioned in the declaration.

(*a.*) The matter is not pleaded under that act.

Potter's Dwarris Stat. 225–7 and notes; Cooley Cons. Lims. 77–8; Sedwick on Stat. 368–77; *State* v. *McLean,* 9 Wis. 292; *Wendel* v. *Durbin,;* 26 Wis. 390.

(*b.*) If relied upon, the act should have been offered in evidence on the trial.

Barton's Prac. 196–7; 1 Minor Inst. 38–9; 1 Greenl. Ev. §479–81; *Legrand* v. *Hampden Sydney College,* 5 Munf. 324; *Sumerville* v. *Wimbish,* 7 Gratt. 225.

II. The special act being out of the way, the plaintiff has neither stated nor shown a cause of action.

(*a.*) At common law, and independent of the Constitution of 1872, a city is not liable for damages conse-

52

quent upon a change in the grade of a street, save where property is actually *"taken,"* or physically and directly affected.

Cooley Cons. Lims. 384, 542–5; Field on Dam. 39-41; Code of W. Va. ch. 79, §13, p. 488; Wood on Nuisances §202; 2 Dillon Mun. Corp. §§783, 797-800 and notes; Sedgwick on Stat. 504; *Mitchell* v. *Rome,* 49 Ga. 19; 15 Am. R. 669; *Gozzler* v. *Georgetown,* 6 Wheat. 597; *Smith* v. *Washington,* 20 How. 135; *Cullender* v. *Marsh,* 1 Pick. 419; *O'Connor* v. *Pittsburg,* 6 Harr. (Penn.) 187; *Dorman* v. *Jackson,* 13 Fla. 539; 7 Am. R. 253 and notes; *Radcliff's ex'r.* v. *Brooklyn,* 4 N. Y. 203; *Graves* v. *Otis,* 2 Hill 466; *Macy* v. *Indianapolis,* 17 Ind. 267; *Hoffman* v. *St. Louis,* 15 Mo. 651; *Markham* v. *Mayor,* 23 Ga. 402; *Simmons* v. *Camden,* 26 Ark. —; 7 Am. R. 620; *Imler* v. *Springfield,* 55 Mo. 119; 17 Am. R. 645; *Pettigrew* v. *Evansville,* 25 Wis 223; 3 Am. R. 50; *City of Quincy* v. *Jones,* 76 Ill. 231; 20 Am. R. 243; *City of Cincinnati* v. *Penny,* 21 Ohio St. 499; 8 Am. R. 73; *O'Brien* v. *St. Paul,* (Minn.) Reporter, vol. 7, p. 82; *North. Trans. Co.* v. *Chicago, Id.* 385; *Lynch* v. *New York, Id.* 405; *Cumberland* v. *Wilson,* Reporter March 12, 1879 (Md.); *Kemper* v. *Louisville,* 6 Reporter 236; *Shawneetown* v. *Mason,* 82 Ill. 246; S. C. 25 Am. R. 321; *Powell* v. *Sims,* 5 W. Va. 1; *Cunningham* v. *Dorsey,* 3 W. Va. 293; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 180; *Eaton* v. *R. R. Co.,* 51 N. H. 504; 12 Am. R. 147; *Hendershot* v. *Ottumwa,* 45 Iowa 658; 25 Am. R. 182; *Eaton v. Elgin,* 83 Ill. 535; 25 Am. R. 412.

(*b.*) Article three, section nine of the new Constitution contemplates legislative action, to enforce and effectuate the rights thereby secured, subject to the limitations to be prescribed by the law-making power. This section is not self-executing. *Groves* v. *Slaughter,* 15 Pet. 449; *Douglas* v. *Harrisville,* 9 W. Va. 162; *Doddridge Co.* v. *Stout, Id.* 704; *Speidel* v. *Schlosser,* 13 W. Va. 604.

(*c.*) The act of 1875 was passed to render operative this constitutional provision. It does not reach the case

of a party whose property is not touched, but whose sole cause of complaint is, *that the plane of the street was made higher than that of his lot.* Acts of 1875, p. 204, chap. 114; Cooley Cons. Lims. 40, 45, 87, 90, 384 *et passim; Comm.* v. *Kimball,* 24 Pick. 370; *McIvee* v. *Ragan,* 2 Wheat 25; Sedgwick on Stats. 307; *Brown* v. *Maryland,* 12 Wheat. 419; *Wynchamer* v. *People,* 3 Kern 391, 477; *Bank* v. *Billings,* 4 Pet. 514; *Carthew* v. *Fire Dept.,* 26 N. Y. 467, 529; *Rumsey* v. *Chicago,* 87 Ill., 6 Reporter 301; *North Trans. Co.* v. *Chicago,* 7 Reporter 385. See language of MOORE, Judge, in *Doddridge Co.* v. *Stout,* p. 705, delivering the opinion of the Court on the identical section and article here discussed, and holding section nine inoperative until enforced by legislation.

*J. G. McCluer,* for defendant in error:

A municipal corporation is a "body politic." Lord Coke says it is a body to take in succession framed as to its capacity by policy, and therefore is by Littleton called a "body politic." Like any other corporation it must be created by statute. It possesses no faculties not conferred upon it, either express or implied, by the law which creates it. It exists solely for the public good. The officers of a corporation are merely the ministers of the same. They cannot act independent of the corporation, but are simply its agents, not composing the corporation within themselves; their acts as such agents are the acts of the corporation. Dillon on Municipal Corporations, vol. 1, pp. 93 and 94.

The proposition which lies at the foundation of municipal corporations in this country is, that they exist only by express legislative enactment; they do not spring into existence, but are authorized and created by the Legislature of the State in which they exist. That Legislature authorizing the corporation grants to it its powers. 1 Dillon 175.

The grant of power by the Legislature to a municipal corporation must be strictly construed, and in the

1880
Special Term.

Johnson
v.
City of Parkersburg.

1880
Special Term.

Johnson
v.
City of Parkers-
burg.

exercise of the authority so conferred, the corporation is limited to the terms of the statute or act conferring this power. It acts not by inherent right of legislation, like the Legislature of a State, but its authority is delegated, and its powers therefore must be strictly pursued. In construing a statute nothing is left to inference or implication. The Legislature is presumed to have granted all the powers it intended, and to have circumscribed those powers, as in its wisdom it thought best ; hence, a corporation, for its own protection, should and can only proceed *pari passu* with the scope of the act or acts investing it with certain and limited powers.

The Legislature of West Virginia, in the year 1867, passed an act directing the city of Parkersburg "to cause to be made and adopted a complete system of grades and drainage for the streets and alleys of said city, which act was amended February 28, 1872, extending the time allowed the city to complete the grading, &c., from March 1867 to November, 1872. See Acts of W. Va. Legislature, 1867 and 1868.

The confidence of the citizen in the Legislature, that it could govern and control a corporation acting and existing under and by virtue of powers conferred upon it by said Legislature, caused many citizens within the corporate limits of said city to improve their property, or build, being governed by the grade as they were informed had been established by said city. The appellee, Johnson, being one of the number, believing that he would be protected in his property, by virtue of the act of the Legislature aforementioned, and the information received from the city surveyor, S. H. Piersol, that the said city had adopted the grade of Pike street as set forth on the profiles and maps above referred to, and made the same a fixed and permanent grade, proceeded to and did build his dwelling-house as before stated ; but the said city, ignoring the requirements of said act of the Legislature, and the amendment of 1872, changed the grade in front of appellee's lot, against his consent and under his

protest, whereupon he instituted his suit against the said city, the result of which was as before stated.

A municipal corporation like an individual is liable for injuries resulting to the property of others from the acts of such corporations, though acting within the scope of its authority, and without any attendant circumstances of negligence or malice. *McCombs* v. *The Town Council of Akron*, 15 Ohio 475 ; *Rhodes* v. *City of Cleveland*, 10 Ohio 160.

When benefits are derived from an improvement made by a corporation, the corporation enjoys them ; where injury is inflicted, the corporation should be responsible for said injury to the party injured. *Goodloe* v. *City of Cincinnati*, 4 Ohio 500-514 ; 18 Ohio 229 ; American Law Reporter, vol. VII, No. 4, p. 104.

The ninth article of Bill of Rights, Constitution of West Virginia, Acts 1872-3, protects the citizen's property by declaring that it should not be taken *or damaged* for public use without just compensation. This article is taken from the constitution of Illinois, and under this said section, I submit that the city of Parkersburg is liable for any damage done to the property of appellee, Johnson, even though the improvement, which was the cause of the injury or damage, was necessary for the public convenience of the citizens of said city. *City of Elgin* v. *Eaton*, 25 Am. Rep. 412, and cases cited.

The act of the Legislature of West Virginia, authorizing the establishment of a permanent grade for the streets and alleys of the city of Parkersburg, is directory, and not mandatory in its character ; and the city cannot and should not be allowed to take advantage of its own laches, and thereby take the property of the appellee— without compensation—which act would be a violation of the plighted faith of the city to its citizens. And if the said city, after establishing the grade of said Pike street, and declaring the same should be the permanent grade, failed to carry out the remaining provisions of said acts, the city and not the individual, who was acting in good faith, should suffer.

The question as to whether the grade was established of Pike street, as shown by the profiles and maps on file in the council chamber, is settled by the resolution adopted by the city-council on the 12th day of August, 1873.

I submit that the demurrer filed by the city should have been, as it was, overruled. The declaration of the plaintiff below, sets forth with sufficient clearness, and charges that the city-council had the authority under the act of the Legislature, to establish a grade for the streets of the city; that the said council did establish the grade for Pike street; that Johnson applied to the officer, to wit: the city surveyor, whose business it was to give the information as to the established grade of streets; that he acted upon the information furnished him, and erected a dwelling-house on the lot mentioned in the declaration; that the city did change the grade in front of his said lot against his protest; that the change of grade of said street worked an injury to his property, and that the city, although requested, refused to pay him for the said damage; and under section nine, Constitution of West Virginia, declaring that "private property shall not be taken or damaged for public use," as also the failure of the city to comply with the requirements of the act of the Legislature before mentioned, whereby appellee's property was damaged by the city, for which damage he has received no remuneration, said Johnson is entitled to recover from the city the amount of damages allowed by the jury; all of which is respectfully submitted.

I desire in addition to call the attention of the court to the case of *The City of Wheeling* v. *Campbell et al.,* 12 W. Va. 36.

*J. A. Hutchinson,* for defendant in error:

1. The Constitution of the State, article three, section nine, prohibits the taking or the damaging of private property for public use, without just compensation.

The Legislature in 1875, Acts, chapter one hundred and fourteen, section one, provided the manner in which the city should proceed in ascertaining such compensation.

This was for the benefit of the city, if it intended to pursue its legal remedy for condemnation of defendant in error's land.

But the city *did not* resort to *this* proceeding; on the contrary, its action in the premises ignored the law, and the constitutional right guaranteed to the citizen.

Hence, the defendant in error was remitted by the wrongful act of the city to his remedy by action on the case; a remedy furnished by the common law for redress on any invasion of the rights of person or property of the citizen.

JOHNSON, JUDGE, delivered the following opinion of the Court:

Independent of the statute set out in the declaration, does the plaintiff in his declaration set up a cause of action? Hard as it seems, the sweeping current of both English and American decisions, wholly unbroken except by the Supreme Court of Ohio, is, that at common law a municipal corporation is not liable for consequential damages arising from a change in the grade of a street, to one whose land is not taken, although his improvement has been made on his lot in conformity to a former grade; that the municipal corporation, as trustee for the public, has the right to change the grade of the streets whenever in its opinion the public good requires it, and if the owners of adjoining property are injured by raising or depressing the street, no action lies against the corporation; it is *damnum absque injuria*. It is unnecessary to cite the authorities upon this proposition. For a collection of them see Cooley Con. Lims. 542 and notes.

Cases have sometimes arisen, in which it was a nice question, whether the injury done to the property was not of such a character as to constitute a "taking"

1880
Special Term.

Johnson
v.
City of Parkers-
burg.

thereof. In the cases of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 180, and *Eaton* v. *R. R. Co.*, 51 N. H. 504, the plaintiffs' lands were flooded in such a way as to make them worthless to the owners, the injury being permanent; and the courts held, that in these cases the lands were *taken*. Many cases have arisen where under the common law it was held, that municipal corporations were liable for throwing surface-water on adjoining lots while grading their streets. See a review of the cases on this subject in *Gillison, trustee,* v. *City of Charleston supra.* But there is a large class of cases like the case before us, where it has been uniformly held at common law, that the plaintiff had no right of action. Judges have frequently regretted that the law was so laid down, and have pointed out the remedy for the injustice, but under the common law were themselves powerless to prevent it.

Parker, Chief Justice, in *Callender* v. *Marsh,* 1 Pick. 433, said: "Cases apparently hard will occur; the present is such a one. The plaintiff's house has been standing twenty years, and he had reason to expect that in any contemplated improvement in the streets his liability to expense would have been attended to by the city authorities. * * * If the reducing or raising of streets, which have been laid out for a definite number of years, and on which houses have been erected, should be made a matter of adjudication like that of altering, widening or turning a street, subject to the same provision for damages, the mischief would be cured; for although theoretically all this may be considered as determined, when the street is originally laid out, yet practically there may be cases, where this just provision has been overlooked. * * * That it might be proper for the Legislature by some general act to provide, that losses of the kind complained of in this suit should be compensated by the town or city, within which improvements may be made for the public good, or by the owner of land, which may be particularly benefitted, is not for us to deny; but without such legislative provision we

have no authority upon the subject, it being clear that by the common law, as well as by our statutes, the defendant in this action is not liable to damages. In no case can a person be liable to an action as for a tort for an act, which he is authorized by law to do ; and, as the statute authorizes surveyors to amend roads and streets by digging them down and building them up, when necessary, the Legislature not being prohibited by the Constitution from enacting such a statute, we think the defendant is entitled to judgment."

*O' Connor* v. *Pittsburgh*, 18 Penn. St. 187, was an action of trespass on the case brought by Michael O'Connor, Roman catholic bishop of Pittsburgh, for the use of the Roman catholic congregation of St. Paul's church, Pittsburgh, against the mayor, alderman, and citizens of Pittsburgh. The church was much damaged, aye, ruined, by lowering the grade of the street. The jury found a verdict for $4,000.00 damages for plaintiff, notwithstanding which Lowrie, J., entered judgment on a reserved question *for the* defendants. In the Supreme Court Gibson, C. J., said : "We have had this cause re-argued in order to discover, if possible, some way to relieve the plaintiff consistently with law ; but I grieve to say we have discovered none. To the commonwealth here, as to the king in England, belongs the franchise of every highway as a trustee for the public; and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers, railroads, canals, or public roads laid out by the authority of the quarter sessions. *   *   *   * It must be admitted, that while it is inequitable to injure the property of an individual for the benefit of the many, it will be impossible for a corporation to bear the pressure of successive common law actions for the continuance of a nuisance, each verdict being more severe than the preceding one. The modification of the remedy would be for the Legislature, which can turn compensation for a permanent detriment into the price of a prospective license ; but to attain com-

1880
Special Term.

Johnson
v.
City of Parkersburg.

plete justice, every damage to private property ought to be compensated by the State or corporation that occasioned it, and a general statutory remedy ought to be provided to assess the value. The constitutional provision for the case of private property *taken* for public use extends not to the case of property *injured* or *destroyed;* but it follows not that the omission may not be supplied by ordinary legislation. No property was taken in this instance; but the cutting down of the street, consequent on the reduction of its grade, left the building useless, and the ground on which it stood worth no more than the expense of sinking it to the common level. The loss to the congregation is a total one, while the gain to the holders of property in the neighborhood is immense. The Legislature that incorporated the city never dreamt that it was laying the foundation of such injustice; but, as the charter stands, it is unavoidable."

There is in the written constitutions of all the States ample protection against the *taking* of private property for public use without just compensation. But observation teaches us, that often private property is rendered almost, if not quite, valueless by public improvements where not one foot of it is *taken.* This was the case, as the court informs us, in *O'Conner* v. *Pittsburg;* and yet at common law there was absolutely no redress for the sufferer. A man owns a little strip of land near the line of a proposed railroad; there may be land condemned up to his line, the road being located on the land of his neighbor; the road benefits his neighbor, because he has a large farm and the conveniences are considerable to him, while the small strip is almost ruined. The one gets damages for the land taken, but the other gets no damages for the injury inflicted. A municipal corporation makes a change in the grade of a principal street. One man owns a beautiful mansion on the summit of the hill. A change in the grade would be a great benefit to the whole city, and particularly to the owners of lots on said

street, who have not yet built thereon ; the council of

the city determine to make the change ; a cut up to the very line of the man's lot on the summit is made fifteen feet deep; everybody in the city except that man is ben- efitted, but his property is ruined ; he cannot use it as it is, and if it were practicable to lower his brick mansion, it would cost him more than it is worth.    The common law says he is  without remedy.    His property was not *taken* for public use ; but was it  not *damaged* for public use ? and is not the injury the same in character, if not in extent, as if it had been actually taken ?  Why should one man suffer all the loss  for the benefit of the public ? If the change was necessary for the public good, does not justice require that the public, for whose good it was made, should pay for the damages occasioned by it ?  This rule puts all the citizens upon an equality ; the common law rule makes the one suffer for the many.

It was to prevent this manifest injustice, that section nine of the Bill of Rights in the Constitution of West Virginia was inserted therein and adopted by the people. That section is:

" Private property shall not be taken  *or  damaged*  for public use without just compensation ; nor shall the same be taken by any company incorporated for the purpose of internal improvement, until just compensation shall have been  paid, or secured to be paid, to the owner ; and when  private property shall be taken, or damaged, for public use, or for the use of such corporations, the compensation to the owner shall be ascertained in such manner as may be prescribed by general law.    *Provided*, that when required by either of the parties, such com- pensation shall be ascertained by an impartial jury of twelve freeholders."

The effect of this section is, to declare that a man's property-rights shall not be invaded for public use un- less he receives just compensation, and that his right of property shall not be invaded by a *damage* inflicted upon it, though the property is not taken, as well as that the

corpus of the property itself shall be protected from such invasion.

Section thirteen of article two (the bill. of rights) of the Constitution of Illinois adopted in 1870, is as follows: " Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law. The fee of land taken for railroad tracks, without consent of the owner thereof, shall remain in such owner, subject to the use for which it was taken." The Supreme Court of Illinois has repeatedly held, that this clause of the Constitution extended protection to property not actually taken for public use, but damaged for such use. *The City of Pekin* v. *Breton*, 67 Ill. 477 ; *City of Pekin* v. *Winkle*, 77 Ill. 56 ; *City of Bloomington* v. *Brokaw*, *Id.* 194 ; *City of Shawneetown* v. *Mason*, 82 Ill—; *City of Elgin* v. *Eaton*, 83 Ill. 535. The facts of the last case were very similar to those in the case at bar, and Walker, Judge, who spoke for the whole court, after quoting from the Constitution, that " private property shall not be taken or damaged for public use without just compensation," said : " Now this was private property and the improvement was being made for public use; and if the property was damaged thereby, the appellee is entitled to just compensation for such damage."

The cases cited from Illinois, by the counsel for the city in his argument, which were decided since the case in 83 Ill., all arose before the adoption of the Constitution of 1870. In *Transportation Company* v. *Chicago*, 99 U. S., cited by counsel for the city, and which arose in Illinois, and was decided by the Circuit Court of the United States for the Northern District of Illinois, Strong, J., said : " The present Constitution of Illinois took effect on the 8th day of August, 1870, after the work of constructing the tunnel had been substantially completed. It ordains that private property shall not be taken or *damaged* for public use without just com-

pensation. This is an extension of the common provis-
ion for the protection of private property; but it has
no application to this case, as was decided in *Chicago* v.
*Rumsey.*" The reason why it was held in *Chicago* v.
*Rumsey,* 87 Ill. 348, that the Constitution of 1870 had
no application to the case, was because, as the court say,
" So far as the city caused, or could cause, this act to be
done (the act complained of), it did so, not only before
the adoption of the present Constitution, but even before
the delegates were elected who framed that instrument."

It is clear then that if a municipal corporation, in
changing the grade by raising or depressing its streets,
permanently *damages* the private property of an indi-
vidual, without acquiring the right to do so, and if de-
manded, by paying just compensation therefor, violates
section nine of the Bill of Rights, which declares, that
" private property shall not be *taken* or *damaged* for pub-
lic use without just compensation." But it is insisted by
counsel for Parkersburg that the section of the Constitu-
tion just quoted, does not operate *ex proprio vigore,* and
that, so far as it refers to *damaging* property, no statute
has been passed putting it in operation, and until so put
in force by legislation the common law prevails, and it is
not liable for damages. It is true that no such statute
has yet passed, as chapter one hundred and fourteen of
Acts of 1875, only provides for the ascertainment and
payment of damages to the residue of a tract of land
where a part has been taken. As far as the city is con-
cerned it is very true, that the second clause of the sec-
tion is not self-executing, because it says, " where private
property shall be taken or damaged for public use or for
the use of such corporations, the compensation to the
owner shall be ascertained in such manner as may be pre-
scribed *by general law; Provided* that, when required by
either of the parties, such compensation shall be ascer-
tained by an impartial jury of twelve freeholders." It
required legislation to carry out this clause of the sec-
tion. See *Supervisors of Doddridge Co.* v. *Stout,* 9 W. Va.

703; Chahoon's Case, 20 Gratt. 733; *Lamb & Mc-Kee* v. *Lane,* 4 Ohio St. 167; *Watson's ex'r* v. *Trustees of Pleasant Township,* 21 Ohio St. 666. In the last cited case, the statute provided, that the trustees of the township might locate ditches or drains upon lands adjoining or lying near a public road, whenever in the judgment of the trustees such ditches or drains are necessary for the benefit of the road, but makes no provision for compensation to the owner in money to be assessed by a jury for the land appropriated for such ditches or drains. The court held, "that for want of such provision an appropriation of land for a ditch or drain under the act would be in contravention of section nineteen of article one of the Constitution, which provides that when private property is taken 'for the purpose of making or repairing roads  *  *  *  a compensation shall be made to the owner in money;  *  *  *  and such compensation shall be assessed by a jury.' The Constitution in this particular does not execute itself." But they did not hold, that, because no provision had been made whereby they could take the property by paying a just compensation for it, therefore they could take it nevertheless, and be exempt from action. *The court perpetuated an injunction restraining them from taking it at all. The private right of the individual* was secure under the Constitution. That part did execute itself. It contained a positive inhibition on the part of the Legislature to pass any law, by which an individual's private property could be taken or *damaged* for public use without compensation.

In *Pumpelly* v. *Green Bay Co.,* and *Eaton* v. *B. C. & M. R. R. Co., supra,* the parties were acting under grant from the Legislature of the States respectively; but in both cases it was held, that they could not in making their improvements invade the rights of private property by "taking" the same without just compensation, and that in doing so they were liable to an action. I have nowhere seen it contended that the clause of a Constitution, which declares, that "private property shall not be taken for

1880
Special Term.

Johnson
v.
City of Parkers-
burg.

public use without just compensation," requires legislation to put it in force. It has always been regarded as self executing. It is a limitation, not only upon the rights of individuals and corporations, but also upon the Legislatures of the States.

When the words "*or damaged*" were incorporated into the Constitution of West Virginia, in addition to the words "private property shall not be *taken*," the effect was as effectually to protect private property from being *damaged* for public use without just compensation as to prevent it from being *taken* for the same purpose without just compensation. So the Supreme Court of Illinois held in the case of *The City of Elgin* v. *Eaton, supra.*

In that case the court say: "In this case the city entered upon the improvement of the street *after* the adoption of our present Constitution, and *before* the passage of our eminent domain law. *The rights of the parties were then fixed*, and cannot be altered by subsequent legislation; and *the right to recover damages was given by the Constitution.* The first clause of section nine of our bill of rights, *ex proprio vigore* protects the private property of an individual from *damage* for public use without just compensation." There is nothing in the position we have taken, that is in conflict with the principles laid down by this Court, in *Supervisors of Doddridge county* v. *Stout, supra*, and *Speidel & Co.*, v. *Schlosser et al.,* 13 W. Va., 686, or the principles of the decision of the Supreme Court of the United States in *Groves* v. *Slaughter*, 15 Pet. 449. The principles of these cases are readily distinguishable from the principles we hold in this case. But it is insisted that the Legislature has provided no remedy in a case like this. If a new right is created by statute and no remedy prescribed for the party aggrieved by the violation of such right, the court upon the principle of a liberal or comprehensive interpretation of the statute, will presume that it was the intention of the Legislature, to give the party aggrieved a remedy by a common law action for a violation of his statutory right,

Syllabus 2.

and he will be permitted to recover in an appropriate action. Sedgwick on Stat. and Const. Law 92, and cases cited; 2 Coke's Inst. 74, 118; Bacon's Abr. 16; *Clark* v. *Brown*, 18 Wend. 220. Whenever a statute creates a right, or a duty or obligation, then, although it has not in express terms given a remedy, the remedy which by the common law is properly applicable to that right or obligation, follows as an incident, 1 Addison on Torts 49 and cases cited. The court said in *Tapley* v. *Forbes*, 2 Allen 24, that it is a well settled and familiar principle that "if a right is conferred by statute without affording a specific mode for its enforcement, a party may resort to any common law action which will afford him an adequate and appropriate means of redress." To the same effect is *Knowlton* v. *Ackley*, 8 Cush. 97. In *Stearns* v. *Atlantic and St. Lawrence R. R. Co.*, 46 Me. 114, May, J., in delivering the opinion of the court, said;

"The first objection now raised is, that this action cannot be maintained, because no remedy is given by the statute creating the liability, nor by any other statute, nor by the common law. That the statute upon which the plaintiffs base their right to recover gives to them a right to compensation for the injury they have sustained is not denied, Stat. of 1842, ch. 9, sec. 5 ; but it is insisted, that the creation of such a right is wholly unavailing to the party injured, unless the same statute or some other, also provide some form of remedy. But such is not the law. Some form of action may always be maintained for a violation of common law right; and it is often said to be the pride of the common law, that it furnishes a remedy for every wrong. In the absence of any authority to the contrary, it is not perceived why a legal right to compensation for actual damage sustained, even though such right depended wholly upon a statute, is not as worthy of protection in a court of law as any common law right. The common law is said to be, in fact, nothing but the expression of ancient statutes ; but whether this be so or not, the injury for the violation of a statute

right is as real as are injuries which exist only by the common law. If a man has a right, he must, as has been observed in a celebrated case, have a means to vindicate and maintain it, and a remedy, if he is injured in the exercise and enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal. *Ashby v. White*, 2 Ld. Raym. 953; *Westmore v. Greenbank*, Willes 577, cited in Brown's Maxims 147. To deny the remedy is therefore in substance to deny the right. And it makes no difference whether the right exists at common law or by statute. Hence the familiar maxim quoted by the counsel in defence, that 'wherever the statute gives a right, the party shall by consequence have an action to recover it.' The authorities cited in defence will be found to be in harmony 'with this maxim. The rule is now understood to be well settled, that when a statute gives a right, or forbids the doing of an injury to another, and no action be given therefor in express terms, still the party shall have an action therefor. Brown's Maxims, 149, 150, and cases cited. The cases cited for the plaintiff not only sustain the same position, but also show that where no other remedy is provided, the proper remedy is a special action on the case."

A constitutional prohibition forbidding an injury to the property of a citizen is certainly as effective as a statute framed for the same purpose; and we have seen that such a prohibition is self-executing. As we have also seen, before the adoption of our present Constitution, no compensation could be recovered for consequential damages inflicted upon the private property of an individual, by work done for the public good, in raising or depressing the streets in a city. It was *damnum absque injuria*, that is, an injury without wrong. It was not contrary to law to thus damage private property, and it was not therefore a wrong, and the party was without redress. But it is different now; the Constitution de-

*Margin note:* 1880 Special Term. Johnson v. City of Parkersburg.

1880
Special Term.

Johnson
v.
City of Parkers-
burg.

Syllabus 3.

nounces it as a *wrong* against the individual now, to *damage* his private property without just compensation, and for that wrong he must have a remedy, although it is not pointed out in the Constitution, or by any statutory enactment thereunder. Where the Constitution forbids a *damage* to the private property of an individual, and points out no remedy, and no statute gives a remedy, for the invasion of his right of property thus secured, the common law, which gives a remedy for every wrong, will furnish the appropriate action for the redress of his grievance. We think therefore the declaration showed a good cause of action, and the demurrer thereto was properly overruled. As to the force of the act of the Legislature set up in the declaration, we do not deem it material to enquire in this case. All reference thereto in the declaration may be regarded as surplusage. It is certain that the defendant, the city of Parkersburg, did not claim to be acting under it when it made the change in the grade of Pike street. As to the question presented, whether said act was in force when said change was made, or the other question, that might be presented, whether, if in force, it is constitutional, we express no opinion, as the questions do not properly arise.

If the improvement of the plaintiff had been made before the street was made, or a grade fixed at all, what his rights would be in that case, we do not decide, as that question does not arise in this case. It is clear from the evidence, that the council had fixed the grade of Pike street, and the city engineer gave the grade thus established to the plaintiff, and that in accordance therewith the plaintiff made the improvement, and, after his improvement had been made, the council of the city against the protest of the plaintiff changed the grade by making a fill in the street of a number of feet in front of his property, and inflicted serious injury upon him.

Syllabus 4.

Upon the question as to the establishment of the grade of the street, the records of the city-council was proper

for the jury ; and the court did not err in admitting them. The question of damages was for the jury. The jury found that the plaintiff had been damaged $200 by the raising of the street, and from the facts certified, we think that the verdict was warranted by the evidence, and the court did not err in refusing to set it aside.

The judgment of the circuit court of Wood county is affirmed.

JUDGES GREEN AND MOORE CONCURRED.

HAYMOND, JUDGE, DISSENTED.

JUDGMENT AFFIRMED.

1880
Special Term.

Johnson
v.
City of Parkers-
burg.