## ⅀ Green *against* The Borough of Reading.

When, by an act of incorporation of a borough, the corporate officers are authorized to improve and repair the streets, by so doing they do not subject the borough to an action by any individual for a consequential injury to his property by reason of such improvement.

*Semble aliter*, where there is an allegation and proof of malice, or of a want or disregard of private right.

ERROR to the common pleas of *Berks* county.

John Green against the chief burgess, assistant burgess, and town council of the borough of Reading. This was an action on the case to recover damages which the plaintiff sustained by the filling up the street in front of his houses, whereby he lost the use of an alley, as well as the use and occupation of his houses and lot.

The court below was of opinion that the plaintiff was not entitled to recover, and thus delivered that opinion to the jury, and directed a verdict for the defendants:

*Banks*, president. " The defendants, by virtue of their authority, derived from the act of incorporation, to improve and repair the streets in this borough, graded the street in front of the plaintiff's house and lot, and raised it about to the height of five feet in front of his house and lot; for this, which he complains of as an injury, this action has been brought.

" This act of incorporation is limited to a certain extent of territory, and to the people residing therein. All the citizens who have resided therein a certain length of time, are members of the corporation, and with certain qualifications are entitled to vote for corporate officers. Their annual election is to be held on the first Monday in May in each year. Their officers consist of one chief burgess, one assistant burgess, nine citizens as town council, and one high constable, all to be citizens of the borough.

" It is to be presumed, that this act of incorporation was granted at the instance of the people in the said territory—such charters are seldom, if ever, granted without being asked for. The law itself may be said to be the will of the people themselves, made to promote their interest. The rule by which they are to be governed, is dictated by themselves. In these days of rapid improvement, every town or village that has half a dozen of houses, a store, a tavern, and a smith shop, must be created into a borough. The people should take care to have their rights well secured, and their power well defined and restricted. The law must be taken as we find it; we cannot repeal or amend it. The town council are the public agents of the people—elected by them, and subject to

[Green v. The Borough of Reading.]

removal at the end of each year; they are chosen to discharge the public functions with which they are clothed, by virtue of the law which created them; if unwise men are chosen, the injury falls upon the people; if wise men are chosen, the people reap the advantages; there are often improvement and anti-improvement interests; these matters must be settled by the majority of votes.

" What power have the defendants under the law?  Have they transcended those powers?  The law confers the authority to improve the streets; this involves that which was done by the defendants.  In the improvement of streets, it is often necessary to cut down in some places and fill up in others.  No town could be improved without the streets could be thus graded.  The law, then, most clearly confers this authority.  The law conferring the power to do that which is complained of, if there is such any where, it is in the law, and not in the acts of the defendants; they obeyed the rule which was dictated by the people for their guidance and to carry out which they were elected, and, I suppose, sworn.  In doing that which is complained of, the defendants kept on the public street; they did not touch the plaintiff's property.

· "Every lot owner knew that the town council possessed this power; every one purchased and improved with a view to it, if he was prudent; if he did not, any loss he may sustain is to be charged to his own folly or negligence.  The improvement of streets may have a tendency to enhance the value of property in particular parts of the town; it may also increase business partially in the same way; it may diminish both in other parts of the town; these are chances which purchasers take on themselves, and generally enter into the consideration of every purchaser or seller, in the regulation of the price; that the situation is good is always a recommendation; the prospect of advantage from the extension of improvement, greatly tends to regulate the price.

" This is the first suit of the kind that has been tried in this state, that I am aware of.  We have many incorporated towns in this state; their charters are much like this; the power to improve the streets the same.  It has been exercised for half a century, without being doubted; this does not make the law, but it is strong evidence of what the law is on this subject, and is a strong demonstration of the opinion of the people.

"If it had been designed, that fancied or real injuries of this kind should be paid for by the corporation, it should have been provided for in the law; it is silent in regard to it.  Nothing is found in the law on the subject of awarding satisfaction for an inconvenience of this kind.  It does not appear that the defendants have exceeded their jurisdiction, nor is there any pretext that it was exercised wantonly, with a view to injure the plaintiff.  In carrying out a work of this kind, some must always suffer inconvenience.  This partial injury to private interests must yield to the accommodation of the public.

[Green v. The Borough of Reading.]

If this action can be sustained, a speedy and total termination will be put to the improvement of our streets, and not only ours, but the streets of every town in the state; such a result would be a great public calamity, for nothing is more desirable in the way of improvement than well-regulated and well-constructed streets; it contributes to comfort and health also, in a high degree.

" In this instance, express power was given to the defendants to improve the streets as they have done; there is no evidence that they exceeded their power, nor is there any which would justify the opinion, that the improvement was wantonly made, without a due regard to the rights and property of the plaintiff. He was formerly a member of the council, and was active in procuring the regulation to be made; he voted for it. The defendants merely carried into effect his own rule. His complaint is not to be favoured. Inasmuch, therefore, as the act complained of was lawful when done, the plaintiff cannot sustain this action against the defendants for having done it. The defendants are entitled in law to a verdict.

To this charge counsel for the plaintiff excepted.

*Hoffman* and *Heckert*, for plaintiffs in error, cited 4 *Ohio Rep.* 500; 7 *Watts* 450; 15 *Serg. & Rawle* 176; 3 *Wils.* 461; 1 *Serg. & Rawle* 511; 2 *Rawle* 448; 2 *Johns. Chan.* 166; 14 *Wend.* 51.

*Strong*, for defendant in error, cited sect. 6 of *Act of Incorporation, Pamph. Laws of* 1812, 1813, p. 210; 2 *Barn. & Cres.* 227; 9 *Com. Law Rep.* 277; 4 *Term Rep.* 794; 1 *Com. Law Rep.* 299; *Woolrich* 190; 9 *Com. Law Rep.* 357; 17 *Com. Law Rep.* 236; 1 *Pick.* 418; 7 *Peters* 241; 6 *Wheat.* 593; 9 *Mass. Rep.* 247; 17 *Johns.* 439.

The opinion of the court was delivered by

HUSTON, J.—The plaintiff in error was plaintiff below, and brought this suit to recover damages from the borough of Reading, for filling clay and gravel in one of the streets of that borough, opposite the dwelling house of the plaintiff. None of the facts or of the testimony was brought up; and we have the naked question, whether in one of our boroughs, where by the act of incorporation the power of improving and repairing the streets is given to the corporate officers, they can fill up a hollow place or dig down a hill which is too steep for convenient use. By an act of assembly passed the 29th of March 1813, concerning the borough of Reading, among other powers given to the corporation in the 6th section, they are empowered " to make such ordinances as by a majority shall be deemed necessary to promote the peace, good order, benefit and advantage of said borough, particularly providing for the regulation of the markets; *improving*, repairing, cleansing and keeping in order the streets, lanes, alleys and highways of said borough;

for making ditches, drains and sewers, to dispose of and carry off the water of said borough." In the language of the president of the common pleas, " the law confers the power to improve the streets; this involves that which was done by the defendants. In the improvement of streets, it is often necessary to cut down some places and to fill-up others. No town (except one on a nearly level site) could be improved unless the streets could be thus graded." There was not, as appears from the opinion of the court, any allegation of malice, or even of wanton disregard of private right; it also appears that it was done in pursuance of a regulation, made some time since, and which has been carried into effect in different parts of the borough.

Every man sees when he purchases or builds, whether his lot is on high or low ground, whether the street is level or steep opposite to his property; and he is bound to know, that every highway or street may by law, be made more convenient for public use, than it was in a state of nature. That hills may be cut down, and low or swampy places raised; that if one side of the road or street is higher than the other, it may be made level from side to side, though in doing this, a house on one side may be left somewhat more above the level than could be wished, and on the other somewhat below it.

Although this power has not, so far as we know, been controverted in this state, yet it seems to have undergone judicial decision in other places. It came before the court of King's Bench in 4 *Term Rep.* 794, and was decided in favor of those who raised the road. It again appeared in the common pleas, Sutton *v.* Clarke, 6 *Taunt.* 29, where it was decided on the point, that defendant was acting under the authority of an act of parliament, deriving no emolument to himself personally, and acting to the best of his skill, and within the scope of his authority and so not liable for consequential damage; this case, says C. J. Gibbs, is totally unlike that of an indvidual, who, for his own benefit, makes an improvement on his own land according to his best skill and diligence, not foreseeing it will produce injury to his neighbour; if he thereby though unwillingly injure his neighbour, he is liable. The resemblance fails in this most important point, that his act is not done for a public purpose, but for private emolument; here the defendant executes a duty imposed on him by the legislature, which he is bound to execute.

The matter did not rest here, it came again before the King's Bench, 2 *Barn. & Cres.* 703. An act of parliament had authorized certain persons to make, alter and improve a road. The court observed that digging down and filling up, were the most ordinary and most effectual way of improving roads; the case in 4 *Term Rep.* 794, is cited and approved, as also Sutton *v.* Clarke, and it is laid down, that if those appointed by law to make or improve a road act within their jurisdiction, and with their best skill, they are not answerable for consequential damages; that they may be

IX.—2 H*

answerable if they act arbitrarily, carelessly or oppressively: and this disposes of the case in 3 *Wils.* 461, where for so acting they were held liable; and also of 4 *Ohio Rep.* 500, where it was said to be done oppressively and maliciously.

There is also a case in 7 *Peters* 443. The supreme court of the United States decided that they had not jurisdiction, but the case was an action against the city of Baltimore, for damages consequent on certain improvements of the streets, and in the city court damages were recovered, but on a writ of error this was reversed in the court of the last resort in Maryland, and they refused to grant a *venire de novo,* because no action lay.

In the commencement of the opinion of Chief Justice Gibson, in 3 *Penn. Rep.* 259, where the point was not precisely the same as here, yet he recognizes the power of improving and making safe and convenient the streets, and it is treated as a power incident to every incorporated borough or city. If I am not mistaken in my recollection, the same matter has been decided in the same way in Massachusetts.

On authority, then, and on principle, the decision of the common pleas was right, and I suspect though there may be a temporary inconvenience, the plaintiff will find he has not been injured ; no one thing which can be effected by man, tends more to increase the growth and prosperity of a town or city than good streets. The advantage to the whole town soon raises property in every part of it, and is to the advantage of every inhabitant.

Judgment affirmed.