[No. 8,428.    Department Two.—March 12, 1885.]

## JOHN J. REARDON ET AL., RESPONDENTS, v. THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

MUNICIPAL CORPORATIONS—STREET IMPROVEMENT—LIABILITY FOR CONSEQUENTIAL DAMAGES.—Unless imposed by statute or organic law, no liability attaches to a municipal corporation for consequential damages to adjoining property, resulting from a street improvement done by it in a lawful manner and without malice. Under such circumstances, it is the duty of adjoining proprietors to protect their property.

ID.—DAMAGING PRIVATE PROPERTY—CONSTITUTIONAL LAW.—But under a constitutional provision that "private property shall not be taken or damaged for public use, without just compensation having been first made to the owner," a municipal corporation is liable for such special consequential damages as the adjoining proprietor receives over and above the common injury to the other abutters on the street, or the general public.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are sufficiently stated in the opinion of the court.

*Wm. Craig*, and *John L. Love*, for Appellant.

In the case of purely voluntary municipal corporations and towns, the obligations concerning the construction of streets and sewers are of an imperfect or discretionary character, out of which a civil liability cannot arise. (Dillon on Municipal Corp., 200.) The constitutional provision relates only to taking or damage by the sovereign power, in the exercise of the right of eminent domain. (*Gilmer* v. *Lime Point*, 18 Cal. 251.) The damage referred to in the constitution includes only such damages as are susceptible of compensation before the commencement of public work. (*City of Atlanta* v. *Green*, 67 Ga. 386; *Chicago etc. R. R.* v. *Francis*, 70 Ill. 240; *City of Elgin* v. *Ea-*

O

*ton,* 83 Ill. 535; Code of Civil Proc., § 1258, sub. 3.) The provision of the constitution was not intended to cover damage which is *damnum absque injuria,* or to which the party injured has himself contributed. (*Lansing* v. *Smith,* 8 Cow. 149; *City of Denver* v. *Bayer,* 7 Col. 113; *Rigney* v. *City of Chicago,* 102 Ill. 80; *Moulton* v. *Parks,* 64 Cal. 166; *Green* v. *Swift,* 47 Cal. 536; *Jennings* v. *Le Roy,* 63 Cal. 397; Mills on Em. Dom., § 195.)

*L. Quint,* for Respondents.

The defendant, in opening and grading Army street, and constructing the sewer in it, acted in the exercise of a municipal and corporate power, and for a municipal purpose. (*Sinton* v. *Ashbury,* 41 Cal. 525; *White* v. *Borough of McKeesport,* 101 Pa. St. 394; *City of Williamsport* v. *Commonwealth,* 84 Pa. St. 494.) Article i., section 14, of the constitution of 1879 protects private property from damage for public use without just compensation. (*Barnes* v. *Dist. Columbia,* 91 U. S. 540; *City of Denver* v. *Bayer,* 7 Col. 113; *City of Elgin* v. *Eaton,* 83 Ill. 535; *City of Pekin* v. *Brereton,* 67 Ill. 477; *Johnson* v. *City of Parkersburg,* 16 W. Va. 402; *Dorman* v. *City of Jacksonville,* 13 Fla. 538; *Ashley* v. *Port Huron,* 35 Mich. 296; *Thurston* v. *City of St. Joseph,* 51 Mo. 510; *Levy* v. *Salt Lake City,* 1 W. C. Rep. 310; *Crawford* v. *City of Delaware,* 7 Ohio St. 459; Dillon's Mun. Corp., §§ 999, 1017, 1048, 1050; *Rochester White Lead Co.* v. *Rochester,* 3 Const. 467; *Lloyd* v. *Mayor,* 1 Seld. 375; *Meyers* v. *San Francisco,* 42 Cal. 215; *Bloom* v. *San Francisco,* 64 Cal. 503)

THORNTON, J.—This is an appeal by the defendant from the judgment. The judgment roll alone constitutes the record. The complaint states that the plaintiffs, during the times referred to in it, were the lessees of four certain lots of land on the south-west corner of the San Bruno road and Army street, in the city and county aforesaid, upon which they had constructed a store-house and two dwelling-houses, one of which dwelling-houses they had rented, and the other buildings were used and occupied by them; that on or about the first of March, 1880, the defendant, by its legally constituted officers and agents, com-

menced the construction of a sewer in the center of Army street, from the east side of the San Bruno road, and extending easterly to the waters of the bay of San Francisco, and to grade Army street to the established official grade; that in the construction of this sewer, and in grading this street for a distance east and west of the point where Army street and the sewer cross the San Bruno road, the defendant deposited a large quantity of earth, rocks, and broken stone upon the natural soil through which the sewer was constructed, to the depth of about eight feet, and extending the entire width of the street; that the weight of the material so deposited caused the natural soil of the street to settle and sink; that though the soil settled and sunk, the defendant continued to fill in with the same material without taking any precautionary measures to protect plaintiffs' property from the injury which the defendant was daily causing to be done, and wrongfully and unlawfully displaced the natural soil of the land on which plaintiffs had constructed the buildings above mentioned; that the displacement destroyed the foundation of the buildings, which had always been firm and solid; that plaintiffs frequently notified the elected and qualified officers of the defendant of the damage it was causing to be done daily to the property of plaintiffs, as the work of filling in was progressing; that defendant neglected these notices, and took no steps to protect the property of plaintiffs as the work was proceeding; that by such acts of defendant the soil on which plaintiffs' buildings rested was raised above its original position about eight feet, and moved south a considerable distance; that plaintiffs had to take steps to protect their buildings, which cost them about $1,000; that the buildings were damaged about the same sum; and that the time and labor expended about this by plaintiffs was worth the sum of $500.

The pleader then proceeds to aver a presentment of a claim and demand to the board of supervisors of the defendant, for the injuries aforesaid, and the rejection of this claim and demand by the board. The above are the substantial averments of the complaint. The verdict in favor of plaintiffs was for $500.

As the case is presented by the record, this court is bound to assume that the verdict has affirmed every averment of the com-

plaint essential to a recovery. The only question, then, to be determined, is this, Does the complaint state a cause of action ?

It will be observed that the theory on which the cause is rested is, that the defendant, in grading a street and constructing a sewer in the center of it, deposited earth, stone, and broken rock (heavy material) on the whole width of the street, to raise it to the established official grade, by reason of which, and the soft and yielding nature of the soil below, the subjacent earth was squeezed and pressed down and outwards, causing the displacement and destruction of the foundation on which the houses rested, and the injuries complained of ; and that defendant, though notified, neglected to take measures to prevent this squeezing, pressure and displacement, from which the injuries counted on resulted. It may be observed here, that though the allegation of the complaint is that the defendant wrongfully and unlawfully displaced the natural soil of the land on which the plaintiffs' buildings were constructed, it is not averred that it was done otherwise than by the settling and sinking of the soil of the street on which the weight of the heavy material deposited pressed. The plaintiffs and defendant concede that the displacement was caused by the pressing and squeezing out of the soil on which the material was placed, and it is averred that the place of deposit of this material was the street in its entire width.

It does not appear that the plaintiffs deny the right of defendant by law, to fill up and grade Army street to the official grade fixed by law, and to construct a sewer therein. This is clear from the fourth subdivision of section 1 of the act of March 16th, 1878. This act is entitled " an act to confer additional powers on the board of supervisors of the city and county of San Francisco, to provide for the opening of Army street, and the condemnation of private property therefor. (See Stats. 1877–78, p. 270.) As this act is not pleaded in justification of the grading and filling done by the city on the street referred to, it may be that it cannot be noticed. That need not be determined, as it is conceded by the plaintiffs that the power to do this work is conferred by section 74, subdivision 4, of the act of 1856, known as the " Consolidation Act." The cause will be considered on this admission of ample power in the defendant, to do the work of filling and grading Army street.

The defendant, the city and county of San Francisco, being engaged in a lawful work, authorized by the statute, it would seem strange that it should be held liable for any injury resulting from such work, if done in a lawful and proper manner, unless such liability is imposed by statute, or the organic law of the state.

We do not understand counsel for plaintiffs to put forth any contention contrary to the rule above indicated. If the defendant was empowered by law to do the work counted on, in Army street, the averment in the complaint, that such work was unlawful and wrongful, would amount to nothing. Such epithets in a pleading are, in general, meaningless. They may be and are generally inserted with no valuable purpose, but only to round off or swell out a sentence. Unless the matters averred show the acts complained of to be unlawful or wrongful, such words are mere superfluous verbiage. They may and should be rejected as surplusage. It being conceded here that the defendant was engaged in a work authorized by law, we may reject the words " unlawfully " and " wrongfully " from the allegations of the complaint.

One of the main contentions of the plaintiffs is, that the defendant did the work unlawfully and negligently, for the reason that, after being warned by notice that it was by its acts inflicting damage on the property of plaintiffs, it continued to do the work inflicting such damage, without making use of any measures or taking any steps to prevent it. Does any such obligation, aside from a statute or constitutional provision imposing it, rest on the defendant in this case? It is not averred that the plaintiffs took any steps to ward off or prevent the damage resulting from the work, though they knew it was going on. We must hence conclude that they did not. We are not authorized to assume that they (the plaintiffs) took any such steps without averment and proof, and neither appear here. Applying the maxim, " *de non apparentibus et de non existentibus eadem est ratio*,"—see Broom Leg. Max. (6th ed.) *163,—and this is a proper case for its application, we are authorized to assume that plaintiffs stood by, calmly contemplated the injury to their property going on before their eyes, and took no steps to prevent it. The further question arises, Was it not a duty imposed

by law on the plaintiffs themselves, to take and adopt measures of prevention?

Nothing appearing to the contrary, we are bound to assume that the land in the street was acquired by defendant for a public purpose, by lawful means, and in a lawful manner. The injury was caused by the defendant improving the property, a public highway, which, under the law, it was entitled, as an agent of the state, to improve in the manner it was engaged in doing. No property of the plaintiffs was taken. It is only claimed to be damaged. The defendant, engaged in doing a lawful work, in the way of improving such property and constructing a highway for the use and benefit of the public, and in an especial manner for the persons owning property abutting on it, to which class plaintiffs belonged, caused the damage complained of.

We are of opinion that the law is well settled, that when a municipal corporation like the defendant is engaged in doing such work as is set forth in the complaint, in a lawful manner and without malice, no liability for damages attaches to it, unless such liability is imposed by some statute law, or the organic law of the state. The law is thus stated in *Transportation Co. v. Chicago,* 99 U. S. 635. In doing the work, the municipality was acting as the agent of the state, which has control over all highways, performing a public duty imposed on it by law. The Supreme Court of the United States, in the case just above cited, said, speaking by Strong, J.: " It is undeniable that in making the improvement of which the plaintiffs complain the city was the agent of the state, and performing a public duty imposed upon it by the legislature. And that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted, alike in England and in this country. It was asserted unqualifiedly in *Governor, etc., Manuf'rs v. Meredith,* 4 Durn. & E. 794; in *Sutton v. Clark,* 6 Taunt. 29; and in *Boulton v. Crowther,* 2 Barn. & C. 703. It was asserted in *Green v. Borough of Reading,* 9 Watts, 382; *O'Connor v. Pittsburgh,* 18 Pa. St. 187; in *Callender v. Marsh,* 1 Pick. 418, as well as by the courts of numer-

LXVI. CAL.—32.

ous other states.    It was asserted in *Smith* v. *Corporation of Washington*, 20 How. 135, in this court, and it has been held by the Supreme Court of Illinois.    The decisions in Ohio, so far as we know, are the solitary exceptions.    The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason.    The state holds its highways in trust for the public.    Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it.    But it is the prerogative of the state to be exempt from coercion by suit, except by its own consent.    This prerogative would amount to nothing, if it does not protect the agents from improving highways which the state is compelled to employ.    The remedy, therefore, for a consequential injury resulting from the state's action through its agents, if there be any, must be that, and that only, which the legislature shall give.    It does not exist at common law. The decisions to which we have referred were made in view of Magna Charta, and the restriction to be found in the constitution of every state, that private property shall not be taken for public use without just compensation being made.    But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.    They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action.    This is supported by an immense weight of authority." (99 U. S. 641, 642.    See, also, *Radcliff's Ex'rs* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195.)

We think, also, that in accordance with the rule laid down in *Shaw* v. *Crocker*, 42 Cal. 437, there being no statute or constitutional provision changing the rule, the plaintiffs were bound to take steps to protect their own property from injury.    In this case it appears that the plaintiff was the owner of several lots in Sacramento, fronting on First street, and of several frame buildings erected thereon.    She substantially averred that the defendant and his servants wrongfully entered upon said lots; " unlawfully, willfully, carelessly, and negligently threw, deposited, and forced stones, gravel, and earth, and other solid

and weighty substances, upon and against such buildings, and upon and against the timbers supporting the same," whereby the timbers were forced from their places, and the buildings were thrown down and destroyed. The defense to the action on which the court passed was, that the defendant was employed by the city of Sacramento to raise the grade of First street in front of plaintiff's premises, and that he performed the work in accordance with the contract, under the orders and directions of the trustees of the city, and its officers authorized by law to superintend the same; that the work was performed in a proper, discreet, and careful manner, doing no more damage than was necessary; that the plaintiff's buildings were located on or near the street, and the plaintiff had due notice of the grading of the street, and might, by the exercise of reasonable care, have protected the buildings from damage; but negligently omitted to do so, whereby the buildings fell down and were destroyed without any fault of the defendant. The court proceeded to observe, through Crockett, J., page 437, as follows: "At the trial, the plaintiff proved the value of the buildings, and that they were thrown down and destroyed by the pressure of the earth and other materials deposited in the street by the defendant in raising the grade under his contract. The plaintiff then rested, and the defendant moved for a non-suit, on the ground that there was no evidence tending to show that the work was performed in a careless or improper manner, or that the damage was owing to any carelessness or negligence on the part of the defendant, his agents, or servants. The motion was denied, and the defendant excepted and assigns this ruling as error. After careful examination of the evidence in chief for the plaintiff, I discover none which tended in the slightest degree to prove that the work of grading the street was performed in an improper, careless or negligent manner, or that the damage to the plaintiff's property resulted, in any degree, from a want of proper care or skill on the part of the defendant or his servants. It was proved that the plaintiff had notice of the grading of the street, and some days before the buildings were damaged sent a carpenter to examine them, who reported to her that they could be protected from injury by the erection of a bulk head; but she made no effort to erect it, so far as the proof

shows.   The city had the right to raise the grade of the street,
and if the contractor performed the work with proper care and
skill, he is not responsible for any damage which may have re-
sulted to the contiguous property.   This is settled by an over-
whelming weight of authority, and is apparently conceded to
be the·law by the plaintiff's counsel.   (*Governor, etc., Man-
uf'rs* v. *Meredith*, 4 Durn. & E. 794; *Wilson* v. *Mayor, etc.,
New York*, 1 Denio, 595; *Green* v. *Borough of Reading*, 9
Watts, 382; *Callender* v. *Marsh*, 1 Pick. 418; *Thurston* v. *Han-
cock*, 12 Mass. 220 ; *Goszler* v. *Corporation of Georgetown*, 6
Wheat. 593; *St. Louis* v. *Gurno*, 12 Mo. 414; *Radcliff's Ex'rs.*
v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195, 203.)"

In the case just remarked on, the facts showed more of a
physical invasion of the land than the case under consideration,
and came nearer a taking of the property.   The land on which
the buildings stood was so covered with earth and other heavy
material that the buildings were by such material forced from
their foundations, and destroyed as buildings.   In the case be-
fore us there was no entry on the plaintiffs' property, nothing
thrown, forced, or deposited on it ; but in consequence of the
pressure of the weighty deposit on the soil underlying the street
and the earth beneath, and the soft, yielding nature of such un-
derlying stratum, the lot of plaintiffs was forced outwards and
upwards, and in consequence the foundations of the houses on
it were injured.   There was no entry on the adjacent land, and
no physical invasion of it is averred.   Following, then, the rule
of *Shaw* v. *Crocker*, *supra*, which we approve, we are of opin-
ion that the obligation to support the foundations of the build-
ings, and to take care that their property should receive no
damage, rested on plaintiffs, and that they, and not the defend-
ant, are amenable to the charge of negligence and want of prop-
er care.   See, also, *Transportation Co.* v. *Chicago*, and *Rad-
cliff's Ex'rs.* v. *Mayor, etc., of Brooklyn*, *supra*.   Such damages
as were sustained in *Shaw* v. *Crocker* are consequential, and
are not the subject of an action which can be maintained with-
out some provision of law, statutory or constitutional, giving it.

But the contention is also put forth by the plaintiffs that the
constitution comes to their relief, and that they are entitled to
recover, by virtue of the provision of the organic law of the

state, which prescribes as a paramount rule that " private prop-erty shall not be taken *or damaged* for public use, without just compensation having been first made or paid into court for the owner." (Const. Cal., art. 1, § 14.) It is well known that the clause as to the protection of private property against an appro-priation for public use was changed by the constitution adopted in 1879, and is no longer as it was under the former constitu-tion : " nor shall private property be taken for public use with-out just compensation." (Const. 1849, art. 1, § 8.) The words above quoted show some of the changes—indeed, all of them—that require notice here. As the clause now stands, pri-vate property cannot be *damaged* for public use without just compensation having been first made or paid as prescribed.

Are the plaintiffs, then, entitled to recover of defendant un-der this constitutional guaranty against damage? This ques-tion is new in this court; this being the first cause coming be-fore it since the adoption of the present constitution, requiring the decision of this question.

To what kind of damage does this word " damaged " refer? We think it refers to something more than a direct or immedi-ate damage to private property, such as its invasion or spolia-tion. There is no reason why this word should be construed in any other than its ordinary and popular sense. It embraces more than the taking. If it did not refer to more than the damage above mentioned, the word " damaged " in the clause relied on would be superfluous. It seems to us that the direct invasions spoken of would come within the clause as it stood in the constitution of 1849. If the word " damaged " only em-braced physical invasions of property, the right secured by this word would add nothing to the guaranty as it formerly stood. In the case above cited from 99 U. S., the court said, referring to a clause in the constitution of Illinois similar to that in the constitution of this state in force since 1879, that " this is an extension of the common provision for the protection of private property." (Page 642.) This remark may have been *obiter*, as the case before the court was one occurring prior to the in-sertion of the clause in the Illinois constitution ; but it seems to have been concurred in by the whole court, and if not so con-curred in, it was the *dictum* of an able and learned jurist, whose

judgment is entitled to and should receive great respect. And it will occur to any one reflecting on the import of the clause, that if it is not an additional guaranty to the common and usual one, its insertion was idle and unmeaning. The same is held by the highest judicial tribunal in Georgia, in *City of Atlanta* v. *Green*, 67 Ga. 386, in which state there is a like provision in the constitution. We will refer to this case at some length.

The declaration contained two counts. The first charged the defendant below (the city of Atlanta) with damages to plaintiff's lots, by reason of its negligence in throwing earth on her lot in the grading of a street in said city, and thereby causing the overflow of her premises with sand and water, destroying her garden, and rendering it unfit for use and cultivation. The second count was for damages to her lot, resulting from the grading of the street bounding the same, by raising the level of said street fifteen feet higher than it was originally, opposite plaintiff's lot, thereby permanently injuring her property and her fences, and making it difficult for her to have access to her home. The city tendered the following request to the court, to be given to the jury:

" The city would have a right to grade the street in question, and no right of action would accrue to plaintiff from injuries caused by such grading, unless there was a *direct* invasion of the plaintiff's premises ; and for such direct invasion of her lot, she would be entitled to recover the damages caused thereby."

The question as to the meaning of the constitutional guaranty was here directly presented. It may be remarked, that as to the first count the plaintiff would be entitled to recover independent of any constitutional provision, as held in many cases ruled by courts of high authority. (See *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 ; *Eaton* v. *Boston C. & M. R. Co.*, 51 N. H. 504 ; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463 ; *Eastman* v. *Meredith*, 36 N. H. 296 ; *Weet* v. *Brockport*, 16 N. Y. 161 ; *Harper* v. *Milwaukee*, 30 Wis. 365 ; *Thurston* v. *City of St. Joseph*, 51 Mo. 510. See other cases cited in 2 Dill. Mun. Corp., § 985, and note, and sections 1038 and 1052, and notes.) The city, by overflowing the land of another, as set forth in the first count, would be guilty of a nuisance which it can no more commit than a private individual.

(*Weet* v. *Brockport, supra*, per Selden, J.) But the question arose on the second count, and was directly presented in the request quoted above. The damages so caused are consequential in their nature. Discussing the city's right, the court observed as follows : " It has, no doubt, been long the well-settled rule in this state, as recognized and enforced by our courts, that municipal corporations are not liable for *consequential* damages caused by the raising and lowering of the grade of streets ; and the decisions have rested upon the common law doctrine, that the proper construction and improvement of streets are supposed to be made for the public good, and that private injury or inconvenience that may arise to adjacent lot-holders, as a consequence of such raising or lowering the grade of the street, must be borne by the proprietor without compensation, because his right to such must yield to the promotion and advancement of what is the public good of the city. (See *Markham* v. *City of Atlanta*, 23 Ga. 402 ; *Mayor, etc., of Rome* v. *Omberg*, 28 Ga. 46 ; *Roll* v. *City Council of Augusta*, 34 Ga. 326 ; *Mitchell* v. *Mayor, etc., of Rome*, 49 Ga. 19.)

" But it is now claimed, and so the court instructed the jury, that this rule had been changed by a provision of the constitution of 1877, contained in the last clause of paragraph 1, section 3, of the bill of rights, which reads as follows : ' Private property shall not be taken or damaged for public purposes, without just and adequate compensation being first paid.' It is not denied by counsel for plaintiff in error that, under this provision of the constitution, for any direct and immediate damage done to private property, such as its invasion or the spoliation thereof, the city would be liable for damages, and be compelled to make just compensation, as by the constitution provided : but he insists that it was not the intent or purpose of the framers of that instrument to vary or change the rule, so well established and long recognized by the courts, that, in improving the streets by raising or lowering the grade thereof, the city would not be liable to respond to lot-owners bounding thereon for any consequential damages resulting therefrom. The duty devolves upon this court, then, to construe, for the first time, this clause in the bill of rights. In previous constitutions the words varied from the present : ' Private property shall not be taken for public use

without just compensation,' were the words ordinarily employed. But under the constitution of 1877, further protection is sought to be given to the property of the citizen, and now, 'it shall not be taken or *damaged* for public use without just compensation.' The article does not define whether the damage shall be immediate and direct, or consequential.   Any damage to property for public use must receive its compensation.   It may be, and will no doubt often occur, that the consequential damage may impose a more serious loss upon the owner than a temporary spoliation or invasion of the property."   (67 Ga. 388.)

This decision is followed and approved by the same court, in *Moore* v. *City of Atlanta*, 70 Ga. 611.

These views of the Georgia Supreme Court are, in the main, true, and sustained by the following cases, decided by the highest courts of states having a constitutional guaranty similar to that of the constitution of this state.   (*City of Elgin* v. *Eaton*, 83 Ill. 535; *Rigney* v. *City of Chicago*, 102 Ill. 64; *Johnson* v. *Parkersburg*, 16 W. Va. 402; *City of Denver* v. *Bayer*, 7 Col. 113; *Williams* v. *Gulf, C. & S. F. Ry.*, 1 Denver Law J., No. 34, p. 267; *Graves* v. *Same*, 1 Tex. Law J. 8; *Gottschalk* v. *Chicago B. & Q. R. Co.*, 14 Neb. 550 ; S. C. 16 N. W. Rep. 475.)   In some of the cases just above cited, the damages for which compensation was sought by action were consequential; and it was held that they were recoverable under the constitutional guaranty *against damage* of private property in the exercise of public use.   In *City of Elgin* v. *Eaton* the damages were consequent on grading the street to the grade fixed by law. *Johnson* v *Parkersburg*, *City of Atlanta* v. *Green*, and *Moore* v. *City of Atlanta*, are cases of a change from a grade formerly made.   In such cases, when the work is done with the usual care and skill, there could be no recovery at common law; the injury inflicted is without damage, and the damage without injury, curtly expressed in the maxim " *damnum absque injuria.*" The right of the owner of the property, who has sustained such damage, must yield to the promotion and advancement of the public good.   He has become the owner of the property in subordination to the right of the municipality, conferred by statute, to change the grade of the streets.   (See *City of Atlanta* v. *Green*, and *Moore* v. *City of Atlanta, supra*.)   There can, there-

fore, be no recovery for the injury so sustained. But in the cases just above referred to, the damage was held to be within the constitutional provision as to property *damaged*, whether done with care and skill or not.

We are of opinion that the right-assured to the owner by this provision of the constitution is not restricted to the case where he is entitled to recover as for a tort at common law. If he is consequently damaged by the work done, whether it is done carefully and with skill or not, he is still entitled to compensation for such damage under this provision. This provision was intended to assure compensation to the owner, as well where the damage is directly inflicted, or inflicted by want of care and skill, as where the damages are consequential, and for which damages he had no right of recovery at the common law. That no action for such consequential damage can be maintained by the common law, see *Smith* v. *Washington*, 20 How. 135, and *O'Connor* v. *Pittsburg*, 18 Pa. St. 187; 2 Dill. Mun. Corp. § 990, and cases cited in notes. Ohio seems to be the only state where the contrary is held. See remarks of Bronson J., in *Radcliff's Ex'rs* v. *Mayor, etc., of Brooklyn*, and *Smith* v. *Washington, supra; Crawford* v. *Delaware*, 7 Ohio St. 459, in which the Ohio Supreme Court admits that the rule held by it is in conflict with the decisions both in England and America, and known to be so when decided. The rule above stated is established by such a preponderance of authority that we forbear to dwell further on the point. The cases will be found under the above references, and we will only add that they establish the rule above declared to be law.

We cannot think that the convention inserting in the constitution of this state the word " damaged " in the connection in which it is found, and the people in ratifying the work of the convention, intended to limit the effect of this word to cases where the party injured already had a remedy to recover compensation. They engaged in no such empty and vain work. It was intended to give a remedy, as well where one existed before as where it did not ; to superadd to the guaranty found in the former constitution of this state, and in nearly all of the other states, a guaranty against damage where none previously existed. The provision includes damage to private property, includ-

ing land, and whatever is attached to it. If land and buildings on it, or either, are damaged, this provision requires it to be compensated. And if compensation has not been had in condemning the land for the street under the statute for such condemnation, (see §§ 237, 1263, Code Civil Proc., pt. 3, title 8) it can be recovered in an action.

We do not intend to say, nor do we think, it extends to such damage as the owner of the property injured sustains in common with the other abutters on the street or the general public, but only to that special injury which he receives over and above such common injury. See remarks of Bronson, J., speaking for the court, in *Radcliff's Ex'rs* v. *Mayor, etc., of Brooklyn,* supra, 206, 207 ; observations of Lord Westbury, in *Ricket* v. *Metropolitan Ry. Co.,* L. R., 2 Eng. & Ir. App. Cas. 203. Here the damage is to the houses affixed to the land. This is special damage to the plaintiffs, for which they are entitled to recover, though they may be of the class usually styled consequential.

By reason of the foregoing, we are satisfied and hold, that the complaint states a cause of action, and as the facts of such cause of action are affirmed to exist by the verdict, the plaintiffs are entitled to judgment on this point. We are of opinion that the claim was properly presented to the board of supervisors. The law spoken of in the eighty-fourth section of the consolidation act, to which reference is to be made, is a statute ; for it is to be referred to by its title, date, and section. The claim here is not made under a statute. There is nothing in the point made on behalf of the defendant, that it must be regarded as a county, and therefore is not suable. It nowhere appears in the case that the plaintiffs have received any compensation for the injury sustained by them.

We find no error in the record ; and the judgment is affirmed.

SHARPSTEIN, J., and MYRICK, J., concurred.

Hearing in Bank denied.