## Kuhl et ux. v. City of Philadelphia.

*Frederick H. Warner*, for plaintiffs.

*Joseph H. Lieberman* and *E. Benjamin Rockwell*, assistant city solicitors, and *Augustus Trask Ashton*, city solicitor, for defendant.

Evans, P. J., forty-seventh judicial district, specially presiding, May 18, 1931.—It appeared from the testimony in this case that plaintiffs are the owners of a certain lot or piece of ground located on Sixth Street, between Duncannon Avenue and Lindley Avenue, in the Forty-second Ward of the City of Philadelphia, fronting twenty feet on Sixth Street and extending back a depth of 148 feet; that on March 5, 1894, the City of Philadelphia adopted a plan for this section of the city and fixed the grade of Sixth Street in front of the property in question, the said grade differing materially from the surface grade as it existed at the time; that thereafter a building was erected

on said lot in keeping with the natural grade as it then existed and disregarding the established grade; that in 1928 the City of Philadelphia graded Sixth Street so as to conform to the plan of grade fixed and adopted in 1894, which resulted in leaving the house on this lot a considerable height above the new street level. Plaintiffs brought their suit and claimed to recover for the entire damage caused to their property by reason of the change of grade of the street, including the damage to the building as well as to the ground itself, and the jury rendered a verdict in favor of the plaintiffs in the sum of $3080.

The plaintiffs' contention was sustained by the trial judge as indicated by the affirmance of the following point: "2. In view of the fact that the City of Philadelphia, after establishing the present grade and lines on March 5, 1894, did not carry out the actual physical change upon the ground until 1928, the plaintiffs, if entitled to a verdict, are entitled to recover damages sustained by their entire property, including the building as well as the ground. Affirmed." Defendant contended that the measure of damages was the difference between the market value of the land itself immediately before and immediately after the actual physical change of grade took place and that the building was not to be considered. Five points were submitted by the defendant covering its contention, all of which were refused by the trial judge.

After hearing the arguments of counsel and investigating the matter carefully, we are of the opinion that the trial judge erred in sustaining the position of the plaintiffs and in not sustaining that of the defendant.

At the time of the trial, we were impressed with the unfairness of the rule contended for by the defendant, in that it would be possible for the city to establish its grades many years in advance of the actual physical making of such grades, and it sometimes occurs that the physical grade will run from ten to twenty feet below or above that of the natural grade and the landowner, if he desired to use his land by building upon it, might be obliged, in order to conform to the new grade if he wished to set his house at that grade, either to excavate a large well or hole in which to set his house or build up a foundation that would make his house almost on a pinnacle, the practical result being that the land would not be usable at the time except by building at the natural grade. It frequently happens that these plans are made many years in advance of the actual opening of the streets, so that the property of the landowner may be made useless and unsalable during this period of time, although still subject to taxation. However unfair and unjust this method is in its results to the owner of the land, it is now apparent to us that in the building up of large cities it is absolutely necessary for the city to establish its grades long in advance of its actual grading and improvements, otherwise sewerage would be practically impossible and the grades of streets in some instances would be prohibitive. It is now our conclusion that the owners of suburban lands in cities must suffer this inconvenience and annoyance without any means of compensation. The decisions of the Supreme Court of this state are, we believe, consistent in sustaining the proposition of the defendant, as determined in the cases of Green v. Borough of Reading, 9 Watts, 382; Reading v. Althouse, 93 Pa. 400; Whitaker v. Phœnixville Borough, 141 Pa. 327; Campbell v. Philadelphia, 108 Pa. 300; Groff v. Philadelphia, 150 Pa. 594; Righter v. Philadelphia, 161 Pa. 73; Sixty-second Street, 214 Pa. 137.

The plaintiffs relied principally to sustain their contention on the case of Westmoreland C. & C. Co. v. Public Service Commission, 293 Pa. 326, and since the argument counsel for defendant has gone to the trouble of furnishing us with the entire record of that case. After going over this record we do not find that the question now before us was involved in that case.

After careful consideration, therefore, we feel we must sustain the motion of the defendant for a new trial.

### Decree.

And now, May 18, 1931, after due consideration, motion of defendant for new trial is sustained and a new trial is granted.