[S.F. No. 23398. Aug. 2, 1976.]

MAX HOLTZ et al., Plaintiffs and Respondents, v.
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,
Defendant and Appellant.

## COUNSEL

Rogers, Vizzard & Tallett and John H. Tallett for Defendant and Appellant.

Harry S. Fenton, John P. Horgan, William R. Edgar and Robert R. Buell as Amici Curiae on behalf of Defendant and Appellant.

Hanson, Bridgett, Marcus & Jenkins and William J. Bush for Plaintiffs and Respondents.

Fadem, Berger & McIntire and Michael M. Berger as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—Plaintiffs Max and Harry Holtz recovered a judgment of $30,000 in an action for inverse condemnation against the Bay Area Rapid Transit District (BART). They alleged that excavations by BART

of a sidewalk area adjacent to their property resulted in the withdrawal of lateral support from a building on the land, so that the foundation of the structure settled, causing cracks in the facade. The land settlement was first observed in September 1967. Temporary measures were taken to forestall further damage, but in 1971 additional settlement occurred which did not hinder use or occupation of the building. Extensive repairs were made by plaintiffs; a principal issue at trial was to what extent damages to the building were attributable to the BART excavation.

The trial court ordered that plaintiffs recover, in addition to the amount of the verdict, prejudgment interest from September 8, 1967, and costs, which included $2,125 appraisal fees, $1,470 expert engineering witness fees, and $12,500 attorney fees.[1] BART appeals from the portion of the judgment awarding interest and litigation costs. In an order made after judgment, the court refused to deduct from the amount awarded as interest the sums received by plaintiffs as rent and income during the period before repairs to the building were made. The court properly held that it had no jurisdiction to adjust the award because BART's motion to offset was made after it filed its notice of appeal from the judgment.

BART contends that the trial court erred in awarding litigation costs pursuant to former section 1246.3 of the Code of Civil Procedure.[2] At the time relevant to these proceedings section 1246.3 of the Code of Civil Procedure provided: "*In any inverse condemnation proceeding brought for the taking of any interest in real property,* the court rendering judgment for the plaintiff by awarding compensation for such taking, or the attorney representing the public entity who effects a settlement of such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or such attorney, reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." (Italics added.)

The determinative issue is whether withdrawal of lateral support causing physical damage to a building on the land entitled to that support is a "taking of any interest in real property" as that term is used in the code section. We conclude that when a public entity causes injury to adjacent real property by withdrawing lateral support there has been a

---

[1] These fees will be hereinafter referred to cumulatively as litigation costs.

[2] Section 1246.3 of the Code of Civil Procedure has been repealed effective July 1, 1976 (Stats. 1975, ch. 1275, § 1, p. 3409) but it is still operative as to this litigation. (Code Civ. Proc., § 1230.065.)

taking of a property interest within the meaning of section 1246.3 of the Code of Civil Procedure and hence litigation costs are properly awarded.

The authority for prosecution of an inverse condemnation proceeding derives from article I, section 19, of the California Constitution which provides in pertinent part: "Private property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner."[3] BART contends that the injuries to plaintiffs' building are compensable only under the "damaged" clause of the constitutional provision and cannot be characterized as a taking in the constitutional sense or within the meaning of the statute.

Initially, we observe that although the constitutional provision refers to "property" that has been "taken," section 1246.3 extends to "the taking of any interest in real property." ▇ Judicial determinations of whether property has been taken in the constitutional sense are therefore not controlling in regard to interpretations of the broader statutory phrase.

There can be no doubt that plaintiffs in this case were deprived of a property interest. The right to lateral support from adjoining soil was recognized at common law. It has been explained by two conflicting theories, both of which "consider the right as an ingredient in the 'possession' of the supported land. The theories differ in that the earlier one regarded the right as a natural right (somewhat akin to an easement) in the supporting land, while the later theory considers the right as an enforceable claim to the integrity of the supported land, as a right existing with respect to the supported land." (Fns. omitted.) (5 Powell on Real Property, § 699, p. 284.) California courts have adopted the earlier theory that the right exists incident to the land itself and as a part of the owner's right to enjoy his land. (*Aston* v. *Nolan* (1883) 63 Cal. 269, 272; *Sargent* v. *Jaegling* (1927) 83 Cal.App. 485, 487 [256 P. 1116].) Breach of the duty to provide lateral support to adjoining property gives rise to a cause of action in one having a possessory interest in the supported land. (5 Powell on Real Property, *supra*, § 699, pp. 288-289.)

Today the rights and duties of coterminous owners have been codified in section 832 of the Civil Code, which modifies the absolute duty of

[3]This section was added to the Constitution in 1974 to replace article I, section 14, which was in effect when this litigation commenced. Section 14 provided: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . . ." The change in language does not affect the meaning of "taken" or "damaged."

lateral support that existed at common law. (*Wharam* v. *Investment Underwriters* (1943) 58 Cal.App.2d 346, 349 [136 P.2d 363].) In *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296 [90 Cal.Rptr. 345, 475 P.2d 441], in which these same parties were before us, we held that when a public entity causes physical injuries to adjacent property by the withdrawal of lateral support, the right to recover for that damage is not governed by section 832, but by the constitutional provision that property shall not be taken or damaged for public use without just compensation.

■ These attributes of the right to lateral support, which are recognized and protected at law, require its characterization as an interest in real property.

The next question is whether plaintiffs' property interest in lateral support may be "taken" by BART. It seems obvious that the most likely way in which a landowner's interest in lateral support may be "taken" is precisely the manner in which it was accomplished in the present case, i.e., by excavating adjacent land. BART argues, in effect, that section 1246.3 was intended to apply only to the taking of an interest in real property in the .sense of appropriation for public use, such as by the acquisition of an easement. But nothing in the section implies such a restrictive purpose. Indeed, the legislative history of section 1246.3 supports the conclusion that it was designed to expand the right to recover litigation costs beyond situations in which tangible real property has literally been removed from possession of its owner.

A gradual expansion of the coverage of the statute appears in the various amendments to section 1246.3. Earlier versions provided for the payment of costs in inverse condemnation actions "for the taking of actual possession of real property." (Assem. Bill No. 533, § 1 (June 10, 1971).) This language was amended to "the actual taking of real property." (Assem. Bill No. 533, § 1.2 (Sept. 29, 1971).) When finally enacted, section 1246.3 called for recovery of litigation costs by the successful plaintiff "[I]n any inverse condemnation proceeding brought for the taking of any interest in real property . . . ." (Assem. Bill No. 533, § 1 (Oct. 19, 1971).) It is apparent from this progression that the Legislature intended to include not only the taking of physical possession or title to real property, but also encroachments upon lesser property interests.

In view of the legislative history of section 1246.3 and the fact that the right to lateral support from adjacent land is an interest in real property,

we conclude that withdrawal of lateral support is a "taking of any interest in real property" within the purview of section 1246.3. Therefore, the trial court correctly awarded litigation costs pursuant to that statute.

BART asserts that the withdrawal of lateral support constitutes a "damaging" rather than a "taking" under section 19 of article I of the Constitution and that it therefore cannot be a "taking" within the meaning of section 1246.3. As we have already noted, the broader language in the statute referring to a taking "of any interest in real property" connotes a more expansive concept of taking than that employed by the Constitution. Therefore it is not necessary to establish that withdrawal of lateral support is a taking of property under the constitutional provision in order to find that it is a taking of an interest in real property pursuant to the statute.

Nevertheless we examine BART's contention because in our earlier decision in this case, *Holtz v. Superior Court, supra,* 3 Cal.3d 296 (hereinafter *Holtz I*), we cited with approval *Reardon v. San Francisco* (1885) 66 Cal. 492 [6 P. 317], which is a venerable authority for the distinction between taking and damaging. In *Reardon,* decided shortly after the "damaged" clause was added to the California Constitution, an action in inverse condemnation was brought for damage to buildings caused by soil displacement which occurred in the course of a public construction project on adjacent property.[4] The court held that there had been no taking because the defendant city had not entered or invaded the property and that the injury was compensable under the new "damaged" clause, which was intended to extend recovery to situations in which the public entity had not actually invaded the land. (66 Cal. at pp. 501, 505.)

We noted in *Holtz I* that the damages to plaintiffs' property were of the same nature as those in *Reardon.* (3 Cal.3d at p. 309.) In discussing

[4]Originally state constitutions, like the United States Constitution, provided for recovery in condemnation proceedings only when property had been "taken." Many early decisions held that damage inflicted upon adjacent land in the absence of an entry upon the land by the public entity did not constitute a taking. Such injuries to property went uncompensated because recovery in tort was not available, in accordance with the doctrine of sovereign immunity. To remedy this harsh result, many states amended their constitutions to expressly require compensation for damage to property. California added a "damaged" clause to article I, section 14, of the state Constitution in 1879. (26 Am.Jur.2d, § 151, pp. 813-814, § 158, p. 827; Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stan.L.Rev. 727, 771-774.)

*Reardon,* however, we were not considering the distinction between taking and damaging as a basis for recovery. Rather we were reaffirming another principle of law first set forth in *Reardon*—that there may be liability for the withdrawal of lateral support under the constitutional provision absent a showing of negligence by the public entity. (3 Cal.3d at pp. 303, 309.)

While *Reardon* appears to stand for the proposition that there can be no recovery for physical damages to real property under the "taken" clause unless the public entity has actually entered or in some way physically encroached upon the land, it must be remembered that the case was decided before the turn of the century against a historical background of strict construction of the term "taken."[5] In any event, since section 1246.3 refers to "the taking of any interest in real property," rather than to the taking of real property, we are not restricted by the distinction made in *Reardon.* As we have already suggested, we can conceive of no other common way that a landowner's interest in lateral support can be "taken" except by the type of conduct that occurred in this case, that is, removal of supporting soil from the adjacent property by excavation or similar means. Thus we cannot agree that *Reardon* prohibits characterizing the withdrawal of lateral support as a taking of an interest in real property.

BART next insists that section 1246.3 must be interpreted in a manner consistent with a similar federal statute because the section was enacted pursuant to the requirements of federal law.[6] It is argued that the federal enactment has been interpreted to allow the award of litigation costs in

---

[5]An examination of subsequent cases in which physical injuries to real property occurred in the absence of a physical entry reveal that the technical distinction made in *Reardon* between "taken" and "damaged" has become blurred. Later courts loosely use both terms in conjunction or interchangeably. (E.g., *Rose* v. *State of California* (1942) 19 Cal.2d 713 [123 P.2d 505] (interference with the owner's right of ingress and egress to and from his property); *Aaron* v. *City of Los Angeles* (1974) 40 Cal.App.3d 471 [115 Cal.Rptr. 162] (noise and vibrations from aircraft in the absence of trespass through overhead airspace); *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345 [28 Cal.Rptr. 357] (injury caused by diversion of water from its natural course).)

[6]Section 1246.3 was enacted in 1971 as part of legislation providing relocation assistance for persons whose properties were taken by eminent domain. (Stats. 1971, ch. 1574, § 1, p. 3154.) The federal government had earlier adopted the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 U.S.C. §§ 4601-4655), the purpose of which was to effect a uniform policy for the equitable treatment of persons displaced as a result of federal or federally assisted programs. (42 U.S.C. § 4621.) Certain provisions of the federal act are binding upon the states in regard to any state program receiving federal financial assistance. One such provision is subdivision (c) of section 4654, which requires that a successful plaintiff in an action brought "for the

inverse condemnation actions only in the event the government actually takes property,[7] and therefore section 1246.3 must be similarly construed.

However, as we have seen, the language of section 1246.3 encompasses more than a "taking" of real property, and the legislative history of the statute demonstrates that the Legislature did not intend that an "actual taking" must occur in order to justify the award of litigation costs.[8]

Another contention by BART is that section 1246.3 was intended to impose a penalty upon a public entity which takes property without bringing a condemnation action, and that there is no justification for penalizing a condemner for injuries to property since damaging, unlike taking, is often not foreseeable. No authority is cited for this theory. Because we have found that BART's conduct in the instant case falls within the literal meaning of the phrase "taking of any interest in real property," this distinction would not be applicable in any event. ▉ In addition, as we emphatically reasserted in *Holtz I,* the right

taking of property by a Federal agency" shall be awarded costs, including attorney, appraisal and engineering fees.

Partly in response to this federal mandate, the California Legislature enacted its own relocation assistance legislation, which was made applicable not only to federally funded projects but also to land taken by a government entity for any public improvement. (Gov. Code, §§ 7260, subds. (a), (c), 7261, 7262.) While passage of this legislation was spurred by the need to implement the requirements of the federal act, it was not confined to condemnees whose property was taken for a project which received federal assistance. (Comment, *Relocation Assistance in California: Legislative Response to the Federal Program* (1972) 3 Pacific L.J. 114, 118.)

[7]*United States* v. *Wald* (10th Cir. 1964) 330 F.2d 871, and *Batten* v. *United States* (10th Cir. 1962) 306 F.2d 580, are cited for the proposition that "an actual taking of property" is required to justify compensation under federal law.

[8]We reject another contention of BART based upon the relation of section 1246.3 and the federal act. Under the federal act, costs are granted to a successful plaintiff in an inverse condemnation action "not sounding in tort." (28 U.S.C. §§ 1346 (a)(2), 1491, as incorporated by 42 U.S.C. § 4654(c).) It is asserted that since federal law makes it clear that litigation costs are not recoverable in an inverse condemnation if a "tort" is alleged, section 1246.3 must be interpreted so as to prohibit the award of litigation costs in actions alleging damage to real property. Aside from the fact that no such limitation is made by section 1246.3 and that, as we conclude above, the loss of lateral support may be characterized as a taking of an interest in real property, this argument ignores the established principle that recovery in inverse condemnation is based on the constitutional provision requiring just compensation, not on a theory of tort. (*Reardon* v. *San Francisco, supra,* 66 Cal. 492, 505.) We have consistently rejected the contention that the right to recover in eminent domain derives from tort doctrine, emphasizing that as a matter of policy the owner of property taken or damaged for public use should not contribute a disproportionate share of the cost of a public undertaking. (*Holtz I, supra,* 3 Cal.3d at p. 303; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 262 [42 Cal.Rptr. 89, 398 P.2d 129].)

to compensation in inverse condemnation is not dependent on the foreseeability of injury to the plaintiff's property (3 Cal.3d at pp. 302-303, 308-309), and we are unwilling to read such a requirement into section 1246.3.[9]

Finally, BART contends that the trial court erred in awarding prejudgment interest under section 3287 of the Civil Code because the amount of damages was not ascertained until the jury reached a verdict.[10] This contention is based on a reading of *Lineman* v. *Schmid* (1948) 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380], which held that under section 3287 prejudgment interest is not allowable when the amount of damages must be determined from conflicting evidence and resolved by verdict, accord, or judgment.

■ We conclude that plaintiffs were properly awarded prejudgment interest. ■ This court has explicitly rejected the application of the general principle set forth in section 3287 to inverse condemnation litigation, emphasizing that interest must be computed from the date the taking or damaging was sustained in order to fulfill the constitutional mandate for just compensation. (*Youngblood* v. *Los Angeles County Flood Control Dist.* (1961) 56 Cal.2d 603, 611-612 [15 Cal.Rptr. 904, 364 P.2d 840]; *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746 at pp. 759-760 [185 P.2d 597].)

BART suggests that prejudgment interest is not warranted in this case because plaintiffs were not deprived of the possession or use of their property pending the making of repairs. The contention that an actual taking or dispossession is required in order to justify prejudgment interest in every case lacks merit. The right to prejudgment interest in inverse condemnation accrues as of the date the compensable taking or injury occurred without regard to the nature or scope of the compensable event. (*Parker* v. *City of Los Angeles* (1974) 44 Cal.App.3d 556, 565, fn. 3

---

[9]Plaintiffs argue that a construction of section 1246.3 denying recovery of costs to a landowner whose property has been damaged but not taken would constitute a denial of equal protection. In view of our conclusion that the injuries to plaintiffs' property were the result of a "taking" within the meaning of the statute, we need not reach this question.

[10]Section 3287 provides in pertinent part: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . . This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

[118 Cal.Rptr. 687]; see *Youngblood* v. *Los Angeles County Flood Control Dist., supra,* 56 Cal.2d 603, 612.) The cases on which BART relies involve eminent domain proceedings in which prejudgment interest was denied because, although the condemnation had been announced, the public entity had not actually taken possession of the land or property interest to be condemned as of the time of judgment. Thus, the compensable event had not occurred before judgment was rendered. (E.g., *Riverside County Flood etc. Dist.* v. *Halman* (1968) 262 Cal.App.2d 510 [69 Cal.Rptr. 1]; *People* ex rel. *State Park Com.* v. *Johnson* (1962) 203 Cal.App.2d 712 [22 Cal.Rptr. 149].)

■ There is ample evidence to support the trial court's finding that September 8, 1967, was the date on which damage caused by the withdrawal of lateral support commenced. The trial court therefore did not err in awarding plaintiffs interest from that date.[11]

Plaintiffs urge that the provision in section 1246.3 for award of attorney fees to a prevailing plaintiff in an inverse condemnation proceeding extends to attorney fees on appeal. We do not agree with this construction of the statute. ■ The established rule is that allowance of expert witness and attorney fees is not required by the just compensation clause of article I, section 19, of the California Constitution, and that the discretion to provide for award of these costs lies with the Legislature. (*County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) Section 1246.3 is the sole source of any right to litigation costs in an inverse condemnation proceeding, and therefore that right is limited by the language of the statute.

Section 1246.3 gives the power to award litigation costs in an inverse condemnation proceeding to "the court rendering judgment for the plaintiff . . . or the attorney representing the public entity who effects a settlement of such proceeding . . . ." This reference to the court awarding compensation or, in the alternative, the attorney effecting settlement, reveals an intent to limit recovery of attorney fees to those incurred at the trial or pretrial level. Although an appeal may, as a general proposition, be considered a continuation of the initial judicial proceeding, there is nothing in the statute to suggest that the Legislature intended by the

_____

[11]Plaintiffs argue that the right to prejudgment interest is governed by former section 1255b of the Code of Civil Procedure. Because we agree that section 1255b is not applicable, we need not consider BART's ancillary argument that it was entitled to a setoff of plaintiffs' rents and profits from the date interest accrued in accordance with that statute. Thus the trial court's order denying these offsets must be affirmed.

phrase "any inverse condemnation proceeding" to include a later appeal from the judgment in such proceeding. In the absence of express reference to appellate proceedings we conclude that attorney fees for services rendered on appeal are not recoverable under section 1246.3.

The judgment is affirmed. The post-judgment order denying BART the right to offset rents and profits realized by plaintiffs is also affirmed.

Wright, C. J., McComb, J., Tobriner, J., Clark, J., Richardson, J., and Taylor, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.